UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| CYDE MARIE ESTES, | NO. 4:21-CV-5042-TOR |
| Plaintiff, | |
| v. | ORDER GRANTING IN PART DEFENDANT'S MOTION FOR A PROTECTIVE ORDER |
| PROVIDENCE HEALTH & SERVIES – WASHINGTON, d/b/a PROVIDENCE ST. MARY MEDICAL CENTER, and d/b/a PROVIDENCE MEDICAL GROUP SOUTHEAST WASHINGTON NEUROSURGERY, and JASON A. DREYER, D.O., and LAURA M. DREYER, husband and wife and the marital community thereof, | |
| Defendants. | |

BEFORE THE COURT is Defendant Providence Health and Services'

Motion for a Protective Order Regarding FRCP 30(b)(6) Deposition Notice (ECF

No. 141). This matter was submitted for consideration without oral argument. The

Court has reviewed the record and files herein and is fully informed. For the

ORDER GRANTING IN PART DEFENDANT'S MOTION FOR A
PROTECTIVE ORDER ~ 1

reasons discussed below, Defendant's motion for a protective order is **GRANTED IN PART AND DENIED IN PART**.

## BACKGROUND

This case arises out of a medical malpractice action brought by Plaintiff Clyde Estes against her treating physician, Defendant Jason Dreyer, and her physician's former employer, Defendant Providence Health & Services – Washington, also known as St. Mary Medical Center. *See* ECF Nos. 128 at 2; 132 at 2-3. The present dispute concerns the permissible scope of topics noticed to Providence's Rule 30(b)(6) deponent. *See* ECF Nos. 141; 143-1.

## DISCUSSION

Plaintiff's Rule 30(b)(6) Notice lists 23 topics for examination. *See* ECF No. 143-1 at 2-8. Defendant Providence seeks a protective order as to 20 of those topics. ECF No. 141 at 2. Broadly, Defendant argues that the information sought is (1) privileged, (2) overly vague, and (3) overburdensome. *Id.* at 1-2.

Rule 30(b)(6) provides:

> In its notice or subpoena, a party may name as the deponent a public or private corporation . . . or other entity and must describe with reasonable particularity the matters for examination. The named organization must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf; and it may set out the matters on which each person designated will testify. Before or promptly after the notice or subpoena is served, the serving party and the organization must confer in good faith about the matters for examination. . . . The persons designated

ORDER GRANTING IN PART DEFENDANT'S MOTION FOR A PROTECTIVE ORDER ~ 2

must testify about information known or reasonably available to the organization.

FED. R. CIV. P. 30(b)(6).

Under Rule 26(c)(1), a party from whom a deposition is sought "may move for a protective order." FED. R. CIV. P. 26(c)(1). "The motion must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action." *Id.* Providence has duly certified that it conferred in good faith with Plaintiff. ECF Nos. 141 at 2; 143 at 2, ¶ 3.

Once certification is confirmed, "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." FED. R. CIV. P. 26(c)(1). To establish good cause, the movant must "show[ ] specific prejudge or harm will result" in the absence of an order. *Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1210-11 (9th Cir. 2002). Upon a showing of good cause, the Court has broad discretion to craft a protective order as it deems fit, including by forbidding discovery, limiting inquiry into certain matters, specifying the terms of discovery, or prescribing a certain method of discovery. FED. R. CIV. P. 26(c)(1)(A)-(D); *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984) ("Rule 26(c) confers broad

discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required.").

## A.    Privileged Information

Defendant seeks to preclude inquiry into topics 1-5, 10, 15, 16, 18, and 21 on the basis of privilege, asserting that the noticed subjects violate Washington's peer review and quality improvement statutes. ECF No. 141 at 3. Additionally, Defendant claims that topics 10 and 16 violate attorney-client privilege and the related work-product protection doctrine. *Id.*

Federal courts sitting in diversity apply state substantive law and federal procedural law. *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996). In Washington, the internal records of hospital peer review and quality improvement committees are privileged and immune from discovery in any civil action. *Carbon v. Seattle Reprod. Med. Inc. PS*, 2:19-cv-01491-RAJ-JRC, 2020 WL 4339253, at *4 (W.D. Wash. July 28, 2020) (slip op.) (citations omitted). Specifically, the peer review privilege statute provides:

> The proceedings, reports, and written records of such committees or boards [whose duty is to review and evaluate the quality of patient care], or of a member, employee, staff person, or investigator of such a committee or board, are not subject to review or disclosure, or subpoena or discovery proceedings in any civil action, *except actions arising out of the recommendations of such committees or boards involving the restriction or revocation of the clinical or staff privileges of a health care provider as defined in RCW 7.70.020(1) and (2).*

RCW § 4.24.250(1) (emphasis added).  Similarly, the quality improvement

privilege statute dictates:

> Information and documents, including complaints and incident reports, created specifically for, and collected and maintained by, a quality improvement committee are not subject to review or disclosure, except as provided in this section, or discovery or introduction into evidence in any civil action, and no person who was in attendance at a meeting of such committee or who participated in the creation, collection, or maintenance of information or documents specifically for the committee shall be permitted or required to testify in any civil action as to the content of such proceeding or the documents and information prepared specifically for the committee.  This subsection *does not preclude*:
>
> (a) . . .
>
> (b) [I]n any civil action, the testimony of any person concerning the facts which form the basis for the institution of such proceedings of which the person had personal knowledge acquired independently of such proceedings;
>
> (c) . . .
>
> (d)  [I]n any civil action, disclosure of the fact that staff privileges were terminated or restricted, including the specific restrictions imposed, if any and the reasons for the restrictions[.]

RCW § 70.41.200(3) (emphasis added) (formatting altered for readability).

The purpose animating both the peer review and quality improvement

privileges is to facilitate candid reviews of provider qualifications by keeping the

"studies, discussions, and deliberations [of those bodies] confidential." *Anderson*

*v. Breda*, 103 Wash. 2d 901, 907 (1985); *see also Fellows v. Moynihan*, 175 Wash.

2d 641, 649 (2012).  However, that purpose is not furthered by the secreting of

information disseminated outside of those forums.  *See, e.g.*, *Anderson*, 103 Wn.2d

at 906-7 (explaining that the peer review privilege does not prevent plaintiffs from

discovering the same information contained in committee reports through other

sources, or from discovering whether a physician's privileges have been revoked

as the result of a peer review investigation); *see also, e.g.*, *Lowy v. PeaceHealth*,

174 Wash. 2d 769, 787 (2012) (holding that the quality improvement privilege

"does not protect what goes into or comes out of the quality improvement

committees," but does extend to "documents created as part of the inner workings

of the committee").

      *1.   Topics 1, 2 and 15*

      The parties group topics 1, 2, and 15 together.  ECF No. 161 at 3-4.  Topic 1

requests information regarding the dates of all peer review or quality improvement

investigations of Dr. Dreyer's cases and the number of cases reviewed; the name

and location of the peer review committee (but not the individual committee

members); the outcome of any peer review between 2013-2019; and any

documents showing the agenda items and dates for any peer review or quality

improvement investigation.  ECF No. 143-1 at 2-3, ¶ 1.

      Topic 2 requests information "regarding the dates and nature of any

complaint received by any defendant or any person or entity acting on behalf of

ORDER GRANTING IN PART DEFENDANT'S MOTION FOR A
PROTECTIVE ORDER ~ 6

1  any defendant[ ] regarding Dr. Dreyer that resulted in a peer review or quality

2  improvement investigation." *Id.* at 3, ¶ 2.  Similarly, topic 15 asks for information

3  concerning Defendant's Integrity Line, "including how the line operates, who has

4  access to any information provided through the 'line,' and facts concerning any

5  complaints about Dr. Dreyer between 2013-2019" that were received through the

6  line.  *Id.* at 6-7, ¶ 15.

7      As to topic 1, the motion for a protective order is **granted in part and**

8  **denied in part**.  The motion is granted respecting Plaintiff's request for "any

9  documents showing the agenda items" of the peer review committee's meetings

10  and "any Peer Review Committee Agenda."  Such information likely implicates

11  records generated specifically for and maintained by the review committee as well

12  as the substance of those internal discussions, which is intended to be private.

13      The Court otherwise declines to issue a protective order regarding Plaintiff's

14  request for the disclosure of the name of the peer review committee and the dates

15  and location where it convened.  *See Coburn v. Seda*, 101 Wash. 2d 270, 278

16  (1984) (permitting disclosure of the existence of a peer review committee,

17  including its name, location, and meeting times).  Additionally, the motion is

18  denied to the extent that Plaintiff seeks to uncover information regarding the

19  number of Dr. Dreyer's cases that the peer review and quality improvement

20  committees reviewed.  Defendant has not shown or explained how revealing the

quantity of Dr. Dreyer's cases reviewed by the committee would interfere with the statutory purposes of RCW §§ 4.24.250(1) or 70.41.200(3).  *Id.*

The Court also denies Defendant's motion regarding Plaintiff's request as to "the outcome of any peer review" of Dr. Dreyer between 2013-2019, but narrows the scope of that inquiry.  *See* FED. R. CIV. P. 26(c)(1)(D) (allowing the court to limit the scope of discovery into certain matters).  Under *Anderson*, whether Dr. Dreyer's physician privileges were restricted or revoked as the result of any committee meeting is discoverable information.  103 Wash. 2d at 906; *see also* RCW § 4.24.250(1).  However, the "findings of the [peer review] committee" more generally are unreviewable.  *Id.*

As to topics 2 and 15, the motion is also **denied**.  Both topics request any information received by Defendants that resulted in a peer review or quality improvement investigation and the dates those complaints were made.  ECF No. 143-1 at 3, ¶ 2; 6-7, ¶ 15.  So long as those complaints were generated outside the course of a peer review or quality improvement meeting, they are discoverable. *See Seattle Child.'s Hosp. v. King Cnty.*, 16 Wash. App. 2d 365, 377 (2020) (allowing discovery of communications exchanged between a quality improvement committee and external agencies).

Defendant complains that its Rule 30(b)(6) deponent can only reasonably learn of the information Plaintiff is seeking in these topics by reviewing the records

of the peer review and quality improvement committees, and argues that Plaintiff

will then exploit the exception in RCW § 70.41.200(3)(b) by pressing that its

deponent's newly acquired personal knowledge of such information entitles it to

discovery of those facts. *See* ECF No. 161 at 3, 5 (filed under seal). Defendant's

argument is both speculative and unfounded. Even if Plaintiff did attempt to

exercise § (3)(b) as a loophole to obtaining otherwise privileged information under

the quality improvement statute, her efforts would prove unavailing because the

exception specifically requires any personal knowledge to have been "acquired

*independently* of such [committee] proceedings." RCW § 70.41.200(3)(b)

(emphasis added). As such, otherwise privileged information will not become

discoverable merely because the corporate deponent reviews committee records.

  2. *Topics 3-5*

   Topics 3-5 can be addressed together. They ask for the date during each

year of Dr. Dreyer's surgical practice where his wRVU rate exceeded the 90th,

150th, and 250th percentile of the national average for neurosurgeons or

orthopedic spine surgeons. *See* ECF No. 143-1 at 3-4, ¶¶ 3-5. Additionally, the

noticed topics ask the Rule 30(b)(6) deponent to identify the existence, location

and storage of any document containing this information; who had access to this

information and in what form; and whether the information resulted in any peer

review or quality improvement committee meetings. *Id.*

ORDER GRANTING IN PART DEFENDANT'S MOTION FOR A
PROTECTIVE ORDER ~ 9

The Court **denies** Defendant's motion for a protective order as to topics 3-5. Defendant has neither asserted nor drawn the Court's attention to any evidence suggesting that Dr. Dreyer's comparative wRVU rate was generated exclusively by and for a peer review or quality improvement committee.  RCW §§ 4.24.250(1); 70.41.200(3).  Defendant also argues that Plaintiff's request for "whether [the wRVU] information resulted in any peer review or other quality assurance investigation" is privileged.  ECF 161 at 5 (sealed).  As aforementioned, though, information external to peer review and quality improvement committees is discoverable.  *Seattle Child.'s Hosp.*, 16 Wash. App. 2d at 377.  As such, Plaintiff is within her prerogative to seek any information regarding whether Dr. Dreyer's wRVUs was reported to hospital administration and prompted an investigation.

    *3.    Topics 10 and 16*

The parties group topics 10 and 16 together.  ECF Nos. 153 at 13; 161 at 6. Topic 10 requests information regarding Providence's decision to place Dr. Dreyer on administrative leave, the nature and timing of any staff concerns about Dr. Dreyer prompting this decision, and whether or why not this information was reported to the National Practitioner Data Bank (NPDB) or any St. Mary's medical staff committee.  ECF No. 143-1 at 5, ¶ 10.  Topic 16 requests information regarding Providence's encouragement of Dr. Dreyer's resignation and/or the non-renewal of his employee and surgical privileges, including any documentation of

1   why Providence made that decision rather than terminating him, and whether any

2   adverse report was made to the NPDB.  ECF No. 143-1 at 7, ¶ 16.  In addition to

3   claiming that topics 10 and 16 are privileged under the peer review and quality

4   improvement committee statutes, Defendant also asserts they are covered by

5   attorney-client privilege and the related work product doctrine.

6          Defendant's motion as to topic 10 is **denied**.  The information is not

7   shielded by the peer review or quality improvement privileges because the decision

8   to place Dr. Dreyer on administrative leave and whether that decision was reported

9   to the committees falls under the statutory exceptions.  *See* RCW 4.24.250(1)

10  (making an exception for peer review committee decisions "involving the

11  restriction or revocation of the clinical or staff privileges"); 70.41.200(3)(d) (the

12  quality improvement privilege does not preclude disclosure of the fact that staff

13  privileges were terminated or restricted).  Additionally, for the reasons given above

14  in the preceding analysis of topics 2 and 15, the specifics regarding complaints

15  issued to those committees is not privileged, either.

16         Defendant represents that attorney-client privilege and work product

17  doctrine protects the generation of this information because Plaintiff is attempting

18  to uncover Defendant's reasons for the adverse employment decision.  ECF No.

19  141 at 6.  In response, Plaintiff contends that Defendant stipulated to the fact that

20  Dr. Dreyer was placed on leave and that Defendant failed to report him to the

NPDB in an underlying settlement with the Department of Justice (DOJ) in an

underlying case filed pursuant to the qui tam provisions of the False Claims Act,

31 U.S.C. § 3730(b).  ECF No. 153 at 14; *see United States ex rel. David Yam v.*

*Providence Health & Servs.*, 4:20-cv-5004-SMJ (E.D. Wash.).  Plaintiff believes

this stipulation waives any assertion of attorney-client privilege.  *Id.*  Defendant

replies that the privilege was not waived, because its surrender of documents in the

qui tam litigation was involuntary and compelled by the government's subpoena.

ECF No. 161 at 6.  Defendant attaches a declaration of its former attorney, Ross

Siler, who represented it in the qui tam action.  ECF No. 164.  Mr. Siler avers that,

"[t]hroughout the investigation, Providence declined to produce what it considered

to be attorney-client privileged and/or work product-protected documents" to DOJ.

ECF No. 164 at 2, ¶ 3.

     In a federal diversity action such as this one, state law governs privilege.

FED. R. EVID. 501.  In Washington, the attorney-client privilege "protect[s] the

confidentiality of communications between attorney and client." *Kittitas Cnty. v.*

*Allphin*, 190 Wash. 2d 691, 709 (2018).  The related work product protection

doctrine covers:

> [D]ocuments and other tangible things that (1) show legal research and
> opinions, mental impressions, theories, or conclusions of the attorney
> or of other representatives of a party; (2) are an attorney's written notes
> or memoranda of factual statements or investigation; and (3) are formal
> or written statements of fact, or other tangible facts, gathered by an
> attorney in preparation for or in anticipation of litigation.

ORDER GRANTING IN PART DEFENDANT'S MOTION FOR A
PROTECTIVE ORDER ~ 12

*Id.* at 705 (quoting *Limstrom v. Ladenburg*, 136 Wash. 2d 595, 611 (1998)).

Documents protected by the work product doctrine may only be obtained "upon a

showing of necessity for one's case and an inability to acquire similar material

elsewhere." *Harris v. Drake*, 152 Wash. 2d 480, 486 (2004).

A party may waive attorney-client privilege or the work product privilege.

A client, client's attorney, or representative of the client may waive attorney-client

privilege by voluntarily disclosing the communication to a third party. *Allphin*,

190 Wash. 2d at 710. Respecting waivers of the work product protection,

Washington law tracks federal law. *Id.* at 712. A party does not necessarily waive

privilege under the work product doctrine by disclosing privileged documents to a

third party, so long as the interests of the disclosing party and non-disclosing party

are "similarly aligned on a matter of common interest." *Id.* at 710 (quoting

RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 91, cmt. B).

However, documents which are voluntarily disclosed to an adversary or potential

adversary will destroy the privilege. *In re Pac. Pictures Corp.*, 679 F.3d 1121,

1126-27 (9th Cir. 2012). While involuntary disclosures to adverse parties do not

waive the privilege, the Ninth Circuit has held that "without the threat of contempt,

the mere existence of a subpoena does not render testimony or the production of

documents involuntary." *Id.* at 1130 (citing *Westinghouse Elec. Corp. v. Rep. of

Phil.*, 951 F.2d 1414 (9th Cir. 1991); *United States v. Plache*, 913 F.2d 1375, 1380

(9th Cir. 1990)).  Additionally, courts will investigate whether the subpoenaed

party chose to assert the privilege or not.  *Id.  See also* FED. R. EVID. 502(a).

Here, the Court agrees that the privilege was waived as to topic 10.  In the

underlying qui tam action, Defendant stipulated to the following:

> On May 22, 2018, as a result of concerns articulated by SMMC medical
> staff, Providence, as the employer, placed Dr. [Dreyer] on
> administrative leave and initiated an independent analysis of certain
> concerns articulated as to Dr. [Dreyer] with regard to certain specific
> patients . . . Providence, as the employer, did not report Dr. [Dreyer] to
> the [NPDB] or the Washington State Department of Health.

ECF No. 134 at 72, ¶ F (sealed).

Any documents or admissions produced to this effect constitute a waiver of

the attorney-client privilege or work-product privilege because they amount to a

voluntary disclosure to an adverse third party.  Defendant's reliance on the fact that

some of these documents were produced pursuant to a subpoena is unavailing

because *In re Pac. Pictures* clarifies that the existence of a subpoena itself will not

render a disclosure involuntary.  679 F.3d at 1130.  Therefore, Defendant cannot

claim attorney client or work product privilege as to its decision to place Dr.

Dreyer on administrative leave, the concerns prompting that decision, and whether

or not a report was made to the NPDB.

Defendant's former counsel maintains that, throughout the qui tam

investigation, Defendant declined to produce certain documents that it considered

ORDER GRANTING IN PART DEFENDANT'S MOTION FOR A
PROTECTIVE ORDER ~ 14

1    to be protected by the attorney-client or work product privileges.  ECF No. 164.

2    To the extent any documents or information was not proffered to DOJ on the basis

3    of these asserted privileges, Defendant does not need to produce them here.  FED.

4    R. CIV. P. 26(c)(1)(D) (allowing the court to limit the scope of discovery into

5    certain matters).  Other documents which were produced pursuant to the subpoena

6    and relate to topic 10, however, are discoverable.

7        The same analysis of the peer review and quality improvement issues

8    governs Defendant's motion concerning topic 16, which requests information

9    regarding Providence's encouragement of Dr. Dreyer's resignation and/or the non-

10    renewal of his employee and surgical privileges.  ECF No. 143-1 at 7, ¶ 16.

11        In the underlying settlement, Defendant stipulated to the fact that Dr. Dreyer

12    "submitted his letter of resignation to Providence, which Providence accepted,"

13    and that a report was not made to the NPDB or Department of Health.  ECF No.

14    134 at 72, ¶ F.  The agreement does not mention Providence's encouragement of

15    Dr. Dreyer's resignation or nonrenewal privileges.  The Court therefore **grants in**

16    **part and denies in part** the motion for a protective order as to topic 16.  Plaintiff

17    may inquire about whether Dr. Dreyer resigned, whether a report was filed, and

18    acquire any documentation to that effect, but Defendant is not required to offer any

19    attorney-client protected information concerning Providence's encouragement of

20    the non-renewal or resignation.  FED. R. CIV. P. 26(c)(1)(D).

ORDER GRANTING IN PART DEFENDANT'S MOTION FOR A
PROTECTIVE ORDER ~ 15

1

### 4.    Topics 18 and 21

2    Topic 18 requests "[t]he creation, maintenance, contents, and location of the

3    entire employment and credentialing file concerning Dr. Dreyer."  ECF No. 143-1

4    at 7, ¶ 18.  The topic further specifies that if the file itself or documents within the

5    file changed locations, then Defendant should note the date the move occurred.  *Id.*

6    Defendant argues that certain documents within the file are protected by the peer

7    review and quality improvement privileges.  ECF No. 141 at 3.

8    The Court **denies** Defendant's motion as to topic 18.  The credentialing,

9    hiring, and continuous employment of Dr. Dreyer occurred outside a peer review

10    or quality improvement committee.  *See, e.g.*, *Fellows*, 175 Wash. 2d at 651.  To

11    the extent that any documents which originated in those committees passed out of

12    the committees into Dr. Dreyer's employment file, those documents are likewise

13    non-exempt from disclosure, because the statutes only protect files which are

14    internally maintained by the committees.  *See, e.g.*, *Anderson*, 103 Wn.2d at 906-7;

15    *see also, e.g.*, *Lowy*, 174 Wash. 2d at 787 (the quality improvement privilege "does

16    not protect what goes into or comes out of" the committee).

17    Topic 21 similarly asks for all evaluations of Dr. Dreyer between 2013 and

18    2019 concerning his reimbursement submissions, practice growth, patient volumes,

19    peer comparisons, and provider risk ratings.  ECF No. 143-1 at 8, ¶ 21.  The

20    motion as to topic 21 is **granted in part and denied in part**.  Any evaluations

created and retained by the peer review or quality improvement committees are not subject to disclosure in this litigation.  However, any evaluations generated in the regular course of Dr. Dreyer's employment or released by the committees are discoverable.

**B.    Vagueness and Burdensomeness of Noticed Topics**

Defendant alleges that the topics discussed above and remaining topics are overly vague.  ECF No. 141 at 6-9.  Defendant also maintains that the information sought could be accomplished by less burdensome means.  *Id.* at 6-7.

As to the specificity and burdensomeness of noticed topics, Fed. R. Civ. P. 30(b)(6) requires that the matters for examination are described with "reasonable particularity."  "Courts 'have limited discovery whether the breadth of subjects and number of topics identified in a 30(b)(6) deposition notice renders a responding party's efforts to designate a knowledgeable person unworkable.'"  *Wesley v. CBS Radios Servs.*, 2:18-CV-0466-RSL, 2019 WL 13300429, at *3 (W.D. Wash. June 17, 2019) (slip op.) (quoting *Luken v. Christensen Grp. Inc.*, No. C16-5214 RBL, 2018 WL 1994121, at *2 (W.D. Wash. Apr. 27, 2018)).  "The purpose of the rule is to put the deponent on notice of what will be asked, so that the deponent can prepare a designee." *Tyler v. Chelan Cnty. & Chelan Cnty. Sheriff's Office*, 2:19-CV-0172-MKD, 2023 WL 8242454, at *2 (E.D. Wash. Nov. 28, 2023) (citing *Buie v. Dist. of Columbia*, 327 F.R.D. 1, 9 (D.D.C. 2018)).

ORDER GRANTING IN PART DEFENDANT'S MOTION FOR A
PROTECTIVE ORDER ~ 17

1        Defendant generally alleges that Plaintiff's proposed topics consistently use

2   ambiguous and broad language" and that "[t]he breadth of the requests go beyond

3   what any person could reasonably have had knowledge of regardless of their

4   position within the corporation." ECF No. 141 at 7.  More specifically, Defendant

5   complains that many of the topics request multiple pieces of information, including

6   dates prior to when the relevant events occurred in this case, and that certain

7   unreasonably request comparative data regarding other practitioners the state of

8   Washington, which Defendant cannot know of.  Plaintiff responds that she is

9   amenable to narrowing the scope of some of the requested topics, but that

10  Defendant's argument is unspecific and that certain information was previously

11  admitted to in the underlying qui tam settlement, which indicates that the

12  information is available to Defendant.  *See, e.g.*, ECF No. 153 at 12, ¶ C; 13, ¶ D.

13  The Court examines each topic in turn.

14        Topics 1 and 2 regard Defendant's investigations and complaints of Dr.

15  Dreyer.  The Court **denies** the motion with respect to these topics, as they concern

16  information within Providence's control.

17        Topics 3-5 ask for relevant data comparing Dr. Dreyer's wRVU to the

18  national average for neurosurgeons and orthopedic spine surgeons.  The motion is

19  **denied** with respect to these topics because in the underlying settlement Defendant

20  stipulated to the fact that Dr. Dreyer's w RVU exceeded the 90th percentile of

ORDER GRANTING IN PART DEFENDANT'S MOTION FOR A
PROTECTIVE ORDER ~ 18

physicians based on "market survey data."  ECF No. 134 at 71, ¶ C (sealed).  The

Court assumes the same data or source can answer whether his wRVU rate

exceeded the 150th and 250th percentile of physicians.  Assuming the market data

is not available as to "neurosurgeons and orthopedic spine surgeons" specifically,

per Plaintiff's request, the topic is modified to compare Dr. Dreyer's WRVU to the

national average for physicians.

Topic 6 asks for information regarding Dr. Dreyer's rate of surgical

complications as compared to other neurosurgeons employed or staffed at

Providence facilities in Washington, as well as non-staff neurosurgeons.  The topic

is specific and the information requested is certainly within Defendant's control.

The motion is **denied** as to topic 6.

Topics 8 and 9 (topic 7 was withdrawn) ask for information regarding

Defendants' wRVU compensation plan for neurosurgeons statewide between 2013

and 2019.  The motion is **denied**.  Again, the information sought is specific and

within Defendant's control.  Although the span of years is significant, it is not

irrelevant as it captures the dates Dr. Dreyer was employed by Providence.

Topics 10 and 16 ask for information regarding the decision to place Dr.

Dreyer on administrative leave and his choice to resign.  The motion is **denied**

(within the limitations outlined above), as the request is specific and presumptively

within Providence's control.

ORDER GRANTING IN PART DEFENDANT'S MOTION FOR A
PROTECTIVE ORDER ~ 19

Topic 11 asks for information regarding Defendant's PEPPER program, comparative billing reports, and any other audits of spinal fusion billings between 2013 and 2019.  The Court agrees with Defendant that the request is disproportionate compared to Plaintiff's stated aim, which is to determine "whether Providence was using any provider risk assessment tools . . . to evaluate whether Dr. Dreyer might be at higher risk for medical/insurance fraud and abuse."  ECF No. 153 at 15.  The motion is **granted in part**.  The Court narrows the scope of the topic to specify that Defendant need only provide "information regarding the receipt, dissemination, use, analysis and evaluation of *Dr. Dreyer's surgical practice*."

Topic 12 requests all facts known to Defendant about why its Renton branch did not want Dr. Dreyer to return, Dr. Dreyer's employment status in 2019, all notices of employee action concerning Dr. Dreyer, and the dates Dr. Dreyer was no longer employed and no longer had privileges to perform procedures at Providence.  ECF No. 143-1 at 5-6, ¶ 12.  The Court **denies** the motion as to this topic.  Although there is a significant amount of information requested, it is all information which is reasonably known to Defendant.

Topic 13 asks about the number of multi- and single-level spinal fusions Dr. Dreyer performed between 2013 and 2019, and how his numbers compared with other spine surgeons employed or staffed at Providence's Washington facilities

during that period.  The topic also requests information regarding "[t]he total number of spine procedures performed . . . at St. Providence Mary between January 1, 2006, and December 31, 2021, and yearly and monthly breakdowns of the dates of those surgeries."  ECF No. 143-1 at 6, ¶ 13.  The Court **grants the motion in part**.  Defendant must produce information regarding Dr. Dreyer's spinal fusions and how his numbers compared with other Providence surgeons between 2013 and 2019.  The Court strikes the last sentence regarding the total number of spinal surgeries performed between January 1, 2006 and December 31, 2021.  That information is irrelevant and the request is overly burdensome.

Topic 14 asks for information regarding all persons known to Providence spoke at or attended non-peer review staff meetings where Dr. Dreyer was used as an example of a physician who was well compensated by the wRVU system and any documents or presentation materials to that effect.  ECF No. 143-1 at 6, ¶ 14.  The motion as to topic 14 is **granted in part and denied in part**.  Defendant need not identify all people who spoke at or attended meetings which lauded the wRVU system based on Dr. Dreyer's success, but if any materials pertaining to Dr. Dreyer were produced at those meetings, they shall be discoverable.

Topic 15 asks for information regarding Defendant's integrity line, who has access to the line, and facts concerning any complaints about Dr. Dreyer received through the line.  The topic is specific and the motion is therefore **denied**.

ORDER GRANTING IN PART DEFENDANT'S MOTION FOR A PROTECTIVE ORDER ~ 21

Topic 17 concerns questions and documents showing the quarterly compensation summary described in Dr. Dreyer's employment agreement and data upon which the summary was based for each quarter from 2013 to 2019. The motion is **denied** as the request is specific and clearly within Defendant's knowledge and control.

Topic 18 asks for information concerning Dr. Dreyer's employment and credentialing file. The request is specific and relevant. The motion is **denied**.

Topic 19 concerns the policies Providence had in place to oversee its wRVU compensation system, including any procedures to identify and correct potential abuses, as compared to the actual process used to monitor spinal surgeons from 2013-2019. The request is specific and relevant. The motion is **denied**.

Topic 20 requests information regarding the revenue to Defendants from surgery performed by Dr. Dreyer, plus the percentage of revenue to Defendant St. Mary Medical Center compared to for Dr. Dreyer's surgeries compared to its overall revenue from 2013-2019, with monthly and yearly breakdowns. The amount of information requested is significant, but not unspecific or irrelevant. To reduce some of the burden on Defendant, the Court **grants the motion in part** and holds that Defendant only needs to provide annual comparative breakdowns of Dr. Dreyer's surgeries; it does not need to give monthly breakdowns.

Topic 21 asks for all evaluations of Dr. Dreyer between 2013-2019 concerning his reimbursement submissions, practice growth patterns, patient volumes, peer comparisons, and provider risk ratings.  The motion is **denied** as the information sought is specific and relevant.

Topic 22 concerns Providence's pre-approval process.  The Court is unclear whether this topic has been withdrawn or not—Plaintiff represents it has, but Defendant seems to indicate that only topics 7 and 14 have been withdrawn. *Compare* ECF Nos. 155 at 2, ¶ 5 *with* 162 at 2, ¶ 3.  However, Defendant did not directly address topic 22 so the Court assumes the parties have reached an agreement as to this topic.  If otherwise, the parties shall advise the Court after certifying that they have met and conferred in good faith about the topic.

Topic 23 asks for the readmission rate for patients who received surgical interventions between 2013-2019 and how Dr. Dreyer's readmission rate compared to other physicians at Providence St. Mary.  The Court **denies** the motion, but narrows the scope of the request—Defendant only needs to offer how Dr. Dreyer's readmission rates compared to other spinal surgeons/neurosurgeons at Providence St. Mary.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Defendant Providence & Health Services' motion for a protective order (ECF No. 141) is **GRANTED IN PART AND DENIED IN PART**.

ORDER GRANTING IN PART DEFENDANT'S MOTION FOR A PROTECTIVE ORDER ~ 23

2. The scope of the noticed topics entered at ECF No. 143-1 is modified pursuant to Fed. R. Civ. P. 26(c)(1)(D) as follows:

    a. Topic 1:  The dates of all peer review or other quality improvement investigations of any surgical cases of Defendant Dr. Dreyer, including the number of cases reviewed, and the name and location of the peer review committee (not the names [of] committee members) that reviewed these cases, and the [**adverse employment**] outcome of any peer review of Dr. Dreyer between 2013 and 2019[.]~~, including any documents showing the agenda items and dates for any such peer review or investigation and whether the dates peer review occurred are listed on any peer review committee agenda~~.

    b. Topics 3-5:  The date during each year of the surgical practice of Dr. Dreyer when Dr. Dreyer's wRVU rate exceeded the 90th, 150th, or 250th percentile of the national average for neurosurgeons or orthopedic spine surgeons [**or, if such information is unavailable, for physicians generally based on market rate data**], including the existence, location, and storage of any document with this information, who has access to this information, to whom this information was distributed and in what form, and whether this information resulted in any peer review or other quality assurance investigation of Dr. Dreyer's surgical cases.

ORDER GRANTING IN PART DEFENDANT'S MOTION FOR A PROTECTIVE ORDER ~ 24

c.  Topic 10: Information regarding the decision to place Dr. Dreyer on "Administrative Leave" on May 22, 2018, including the nature and timing of any "concerns articulated by St. Marty Medical Center staff" and the decision not to report Dr. Dreyer to the NPDB, and information regarding whether this decision was reported to the St. Mary medical staff executive committee, the medical staff surgical committee, or any other St. Mary Medical Center medical staff committee.  [**Defendant does not need to produce any documents or information previously identified as privileged and not shared with DOJ in the underlying settlement**.]

d.  Topic 11:  Information regarding the receipt, dissemination, use, analysis and evaluation of [**Dr. Dreyer's surgical practice**] using the "Program for Evaluating Payment Patterns Electronic Reports" (PEPPER), "Comparative Billing Reports" (CBR) for the years 2013-2019, and any other audits of [**his**] spinal fusion billings during this time range.

e.  Topic 13: The number of multi-level spinal fusions performed by Dr. Dreyer between 2013 and 2019, the number of single level spine fusions, discectomies, and laminectomis, and the total number of spine surgeries performed by Dr. Dreyer during this time, and how Dr. Dreyer's numbers for these types of surgeries compared with other spines surgeons

ORDER GRANTING IN PART DEFENDANT'S MOTION FOR A PROTECTIVE ORDER ~ 25

employed by or on staff at any Providence facility in the State of Washington between 2013 and 2019. ~~The total number of spine surgery procedures performed by any neurosurgeon or spine surgeon, including any employed or non-employed surgeons at Providence St. Mary between January 1, 2006 and December 31, 2021, and yearly and monthly breakdowns of the dates of those surgeries.~~

f.  Topic 14: All [**materials disseminated at non-peer review staff or administrative meetings**] ~~persons known to Providence who spoke at or attended any non-peer review staff or administrative meetings~~ where Dr. Dreyer was used as an example of a physician who was well compensated by his use of the [wRVU] compensation system, including any documents, presentation materials, data, photographs, or video presentations.

g.  Topic 16: The decision to allow ~~and/or encourage~~ Dr. Dreyer to resign and/or not renew his privileges as an employee of Providence in 2019, and/or allowing ~~or encouraging that~~ Dr. Dreyer [to] not renew his surgical privileges and any documentation of the effect of allowing ~~and/or encouraging~~ Dr. Dreyer to resign and/or not renew his privileges rather than terminate him and reporting to the NPDB, including whether

any adverse report was made to the NPDB, [**except as covered by attorney-client privilege**].

h.  Topic 20: Information regarding the revenue to defendants from surgery performed by Dr. Dreyer from 2013-2019, including the percentage of revenue to defendant St. Mary Medical Center for Dr. Dreyer's surgeries compared to overall revenue to St. Mary Medical Center from 2013-2019, with ~~monthly and~~ yearly breakdowns for revenue with supporting documents.

i.  Topic 23: The readmission rate for patients who received [**spinal**] surgical interventions performed by Dr. Dreyer between 2013-2019 and how Dr. Dreyer's readmission rate [compared to] other [**neurosurgeons or orthopedic spinal surgeons performing similar operations**] at St. Mary [**during that period**].

The District Court Executive is directed to enter this Order and furnish copies to counsel.

DATED December 8, 2023.



THOMAS O. RICE
United States District Judge